UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ROBIN D. JOHNSON,

Plaintiff,

v.

BONNER COUNTY; BONNER COUNTY SHERIFF'S DEPARTMENT; GARY MADDEN; SHAWN DEEM; TED SWANSTROM; PHIL STELLA; ROR LAKEWOLD; and MIKE GAGNON, in their individual and official capacities; and DOES 1-10,

Defendants.

Case No. 2:18-cv-00244-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Pending before the Court is Plaintiff Robin D. Johnson's Motion for Termination and Money Sanctions ("Motion for Sanctions"). Dkt. 27. Pending as well is Defendants Bonner County, Bonner County Sheriff's Department, Bonner County Undersheriff Ror Lakewold, Shawn Deem, Mike Gagnon, Gary Madden, Phil Stella, and Ted Swanstrom's (collectively "Defendants") Motion to Strike Declaration of Plaintiff's Expert Scott Roder. Dkt. 32. On November 2, 2021, the Court held oral argument and took the motions under advisement. Upon review, and for the reasons set forth below, the Court DENIES the Motion for Sanctions (Dkt. 27) and DENIES the Motion to Strike (Dkt. 32).

## II. BACKGROUND

### A. Factual Background

The facts for the purpose of the instant motions are as follows.[1] On September 24, 2017, at the request of Robin Johnson, Bonner County Sheriff's Office ("BCSO") conducted a health and welfare check on her husband, Craig Johnson, at the couple's isolated home in Coolin, Idaho. Defendant Deputy Gary Madden conducted the check and, during their midnight interaction, Madden and Craig Johnson brandished firearms at each other. Madden then advised Robin Johnson of the results of the health and welfare check. Concerned about the brandishing of firearms, BCSO investigated Craig Johnson on September 25, 2017, and secured a warrant for his arrest on charges of felony assault. BCSO determined it would be best to use BSCO's Emergency Response Team ("ERT") to serve the arrest warrant on Craig Johnson. The ERT involves much more firepower and personnel than a typical police officer pair working together. The instant ERT team consisted of eight members (including two snipers), an armored "Bearcat" vehicle, and a significant amount of weaponry and gear. The ERT team went to the Johnson cabin to serve the arrest warrant on the morning of September 26, 2017.

The Johnson cabin sits in the eye of a J-hook driveway, which loops around the west side of the cabin, around the back of the cabin, and terminates on the south east side of the cabin. When the ERT team arrived at the cabin, Deputy Mike Gagnon took up a position

[1] These facts come from the Complaint (Dkt. 12) and the exhibits accompanying the Motion for Sanctions (Dkt. 27). Obviously, the facts may evolve as the adjudicative process continues and should not be considered final.

in a patrol vehicle parked near the driveway, on the northwest side of the cabin. Six officers, including team leader Detective Phil Stella, Undersheriff Ror Lakewold, Robert Van Buren, Tim Reynolds, Riley Flanigan, and Aaron Walker were positioned with the Bearcat on the northeast corner of the property, a few dozen feet east of Gagnon's position. Two snipers, Shawn Deem and Ted Swanstrom, were assigned the "high ground" on the south side of the property near a small trail that branched off from the main driveway, thus preventing any possible escape by Craig Johnson. Critically, with the home in between all three parties, and given the askew angle at which the cabin sits, there is a significant dispute over the line of sight that the officers had during the ensuing encounter with Craig Johnson.

Upon arriving at the scene, Detective Stella attempted to contact Craig Johnson, alternating between using a public address (PA) system and making telephone calls. This went on for at least 15 minutes. Following this, Craig Johnson exited the cabin. The parties dispute the sequence of events that followed, including how aggressive Craig Johnson was perceived to be. However, it is undisputed that Craig Johnson was shot twice by Deem near the small trail on the south side of the cabin. Although he received medical aid, Craig Johnson succumbed to his injuries approximately an hour later.[2]

**B. Procedural Background**

After paying the Court-ordered bond,[3] Robin Johnson (hereafter "Johnson") filed a complaint against Defendants on September 25, 2019. Dkt. 12. On February 4, 2021,

---

[2] The Court acknowledges that this is a very high-level overview of the facts. However, it should suffice for present purposes.

[3] It is worth noting that this case was originally dismissed with prejudice for failure to prosecute. Dkt. 3. However, upon Johnson's explanation that she needed time to save money for the requisite bonds and because the statute of limitations had not yet run, the Court later vacated its dismissal Order. Dkt. 5.

Johnson filed the instant Motion for Sanctions.[4] Dkt. 27. Johnson seeks termination of the case and monetary sanctions, arguing that because Defendants did not preserve foundational evidence required to investigate the crime scene, the police investigation was a "sham," and that she has "no competent evidence upon which [she] can prepare her case." Dkt. 27-1, at 2. Specifically, Johnson alleges that Defendants did not preserve the locations of (1) her husband's body, (2) the weapon her husband was allegedly holding, (3) the officer towards whom her husband was allegedly aggressing, and (4) the officer who shot and killed her husband. *Id*. Johnson argues that such actions "destroy[ed] completely the court's ability to reasonably assure the truth is available." *Id*. Defendants argue that Johnson's requested sanctions are inappropriate. Dkt. 28. Defendants also subsequently filed a Motion to Strike the Declaration of Johnson's expert Scott Roder (Dkt. 32), to which Johnson objected. Dkt. 35.

## III. LEGAL STANDARD

The authority to sanction a party who has despoiled evidence is based on Federal Rule of Civil Procedure 37 and on the court's inherent power to levy sanctions in response to abusive litigation practices. *Leon v. IDX Sys., Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Rule 37 sanctions are available when a party "fails to obey an order to provide or permit discovery." *Id.* (citing *Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334, 1337–1338 (9th Cir. 1985)). Where, as here, Rule 37 is not applicable because there was no associated discovery order, federal trial courts "are invested with inherent powers that are governed

[4] Johnson has clarified that the Motion for Sanctions is not filed against Gary Madden because he "does not appear to have participated in the service of the warrant." Dkt. 27-1, at 3, n.1.

not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (internal quotation marks and citations omitted). The Court's inherent powers include "'the broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.'" *Id*. (quoting *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)).

A court has discretion to impose sanctions ranging in severity from minor sanctions, such as awarding attorneys' fees, to more severe sanctions, including permitting a jury to draw an adverse inference against a party responsible for the destruction of evidence, ordering the exclusion of evidence, or even dismissal of claims. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *Reinsdorf v. Skechers U.S.A.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013). To decide which spoliation sanction, if any, to impose, courts generally consider: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party. *Reinsdorf*, 296 F.R.D. at 626.

The *Reinsdorf* three-prong test is a popular test and is used nationwide by many courts,[5] including by many district courts in the Ninth Circuit.[6] The Ninth Circuit itself has

---

[5] The *Reinsdorf* test has been used by the Second Circuit and the Fourth Circuit, as well as by district courts in the Second, Fifth, Sixth, and Seventh Circuits. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 520–21 (D. Md. 2010).

[6] For example, the *Reinsdorf* standard has been used by the District of Arizona, the Southern District of California, and the Central District of California. *Surowiec v. Capital Title Agency, Inc.*, 790 F.Supp.2d

(Continued)

not used the test. When reviewing spoliation, the Ninth Circuit has used a two-prong test that requires that a party (1) destroyed relevant evidence, and (2) had some notice that the documents were potentially relevant to the litigation before they were destroyed. *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015); *U.S. v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991).

Although the Ninth Circuit has not directly approved the *Reinsdorf* test, it is still appropriate for the Court to apply the *Reinsdorf* test for three reasons. First, the Ninth Circuit has stated that "part of a district court's inherent powers" includes "the *broad discretion* to make discovery and evidentiary rulings." *Unigard Sec. Ins. Co.*, 982 F.2d at 368 (quoting *Campbell Indus.*, 619 F.2d at 27) (emphasis added). The broad discretion granted to the Court to rule on evidentiary and discovery issues contains a wide amount of flexibility to decide which test will guide the application of this power. Second, the Ninth Circuit has never disapproved of the *Reinsdorf* test. Third, the "simple notice" referred to in the Ninth Circuit test functions as a floor of what sort of actions qualify as spoliation, not as a ceiling. *Glover*, 6 F.3d at 1329. In other words, mere notice *can* be enough for spoliation to have occurred, but having notice does not *necessarily* qualify as spoliation.

The exercise of a court's inherent powers must be applied with "restraint and discretion," and only to the degree necessary to redress the abuse. *Chambers v. NASCO,*

---

997, 1005 (D. Ariz. 2011); *Lewis v. Ryan*, 261 F.R.D. 513, 521 (S.D.Cal.2009); *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013). This Court has also applied the *Reinsdorf* test. *Dickinson Frozen Foods, Inc. v. FPS Food Process Solutions Corp*., 2019 WL 2236080, at *6 (D. Idaho May 21, 2019).

*Inc.*, 501 U.S. 32, 45 (1991); *see also Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3rd Cir. 1994) (courts should choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim"). Accordingly, the determination of an appropriate sanction for spoliation is "confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (internal citations omitted).

## IV. ANALYSIS

### A. Motion to Strike (Dkt. 32)

Because Roder's Declaration is cited in the Motion for Sanctions, the Court will first address Defendant's Motion to Strike Roder's Declaration. Dkt. 32. Defendants suggest Roder's declaration is not in compliance with Rule 702 of the Federal Rules of Evidence (Fed. R. Evid. 702) since Roder does not identify the photographs used in his exhibits and fails to sufficiently explain his methodology (Dkt. 32, at 2). Johnson disagrees, arguing that the identification and explanatory information provided by Roder is adequate for the current stage of the proceedings. Dkt. 35. The Court agrees with Johnson.

Roder's Declaration mostly contains summaries of his attached exhibits, which are (1) curriculum vitae, (2) a photographic reconstruction of the distance between the Bearcat's initial position and its final position, (3) a photographic reconstruction of the line of sight from the Bearcat in its initial position, and (4) a photographic reconstruction of Deem's line of fire. Dkt. 27-31, at 2. These reconstructions are based on photographs that Defendants provided during discovery. *Id.* The pictures demonstrate what Defendants could and could not have seen, based on the locations in which they claimed to have been.

Rule 702 does not strictly apply in this situation, which involves a pretrial motion, rather than testimony at trial. As courts in this District have reiterated numerous times, it is appropriate to "consider expert opinion testimony in ruling on a summary judgment motion so long as it contains facts that would be admissible at trial and the opinion is based on the expert's personal knowledge." *Est. of Kane v. Epley's Inc.*, 2016 WL 7155734, at *2 (D. Idaho Dec. 5, 2016). *Accord Asarco, LLC v. Union Pac. R.R. Co.*, 2017 WL 639628, at *3 (D. Idaho Feb. 16, 2017); *Blankenship v. McDevitt*, 2016 WL 5660401, at *5 (D. Idaho Sept. 29, 2016), aff'd, 724 F. App'x 594 (9th Cir. 2018). In other words, the facts and reliability of the expert matter more than the form of the testimony. As the Motion for Sanctions could dispose of the case as would a motion for summary judgment, the Court accordingly rules that it is appropriate to consider Roder's expert opinion at this stage because it contains facts that would be admissible at trial and the opinion is based on the expert's personal knowledge.[7]

In considering expert testimony, the Court has a "gatekeeping responsibility" to objectively screen such testimony to ensure that it "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999). Here, the Court has reviewed Roder's

[7] Defendant cites to *Nationwide Transport Finance v. Cass Information Systems, Inc.* to argue that expert testimony is not admissible on questions of law for a court to decide. *Nationwide Transport Finance v. Cass Information Systems, Inc.* 523 F.3d 1051, 1058 (9th Cir. 2008). However, *Nationwide Transport* is significantly different from the case at hand. In *Nationwide Transport*, the Ninth Circuit upheld a district court's decision to exclude an expert's legal conclusions but allowed in the expert's testimony about "industry conditions, standards, and practices" as well as "factual corporate norms." *Id*. Here, Roder only offers factual explanations, not legal conclusions, and, as such, it is appropriate to consider Roder's testimony. Additionally, in *Nationwide*, the expert's testimony was reviewed by the Court prior to the trial, not prior to a potentially dispositive motion.

declaration and curriculum vitae and finds he is qualified to opine on the current matters. Roder adequately identified his photographs by providing bates numbers with his pictures,[8] and sufficiently described his methodology for the purposes of the instant Motion for Sanctions. As such, the facts and reliability are sufficient for the instant Motion, despite the form issues that may come up at trial.

Moreover, Defendants have not put forth any contrary expert opinion or declaration to call into question Roder's credentials or his conclusions. All they provided in rebuttal was attorney argument. Such is insufficient to support exclusion of Roder's opinions. *See Columbia Pictures Industries, Inc. v. Fung,* 2009 WL 6355911 (C.D. Cal. Dec. 21, 2009) (accepting expert opinion proffered by moving party in summary judgment proceeding when it was unrebutted by non-moving party). Additionally, if this case proceeds to trial, Defendants will have every opportunity to cross-examine Roder and his opinions.

In short, the Court has reviewed Roder's declaration and finds it is relevant, reliable, and appropriately considered at this stage. Accordingly, Defendants' Motion to Strike is DENIED.

**B. Motion for Termination and Money Sanctions**

*1. Elements of Spoliation*

As noted, a party seeking sanctions for spoliation of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it

[8] Defendants' claim that the photographs are not adequately identified is undercut because they provided the photographs and originally put the bates numbers on the photographs upon which Roder based his line-of-sight calculations.

was destroyed, (2) that the evidence was destroyed with a "culpable state of mind," and (3) that the evidence was relevant to the moving party's claim or defense. *Reinsdorf v. Skechers U.S.A.*, 296 F.R.D. at 626. "The party requesting spoliation sanctions bears the burden of proving all three elements of the claim." *Lofton v. Verizon Wireless LLC*, 308 F.R.D. 276, 287 (N.D. Cal. 2015).

a. Duty to Preserve

"A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence." *Bown v. Reinke*, 2016 WL 107926, at *5 (D. Idaho Jan. 8, 2016). The duty to preserve arises "not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Id.* However, the mere possibility of litigation is not sufficient to trigger a duty to preserve information because "litigation is an ever-present possibility in American life." *RealNetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 246 F.R.D. 517, 523–24 (N.D. Cal. 2009). It is undisputed that Defendants had control over the evidence Johnson argues they spoliated, so the question is whether Defendants had a duty to preserve such evidence.

Cases involving alleged police misconduct help to illustrate these rules. For example, the court in *Jenkins v. Woody* held that the sheriff had a duty to preserve a video recording of the final hours of the plaintiff's death in the jail because, among other reasons, the sheriff's department had a policy that required investigations of an inmate's death, in part with an eye towards future litigation. 2017 WL 362475, at *15 (E.D. Va., Jan. 21, 2017). In another case, a court found that Sciota County had a duty to preserve certain

audio and telephone conversations that contained decedent's request for medical aid, "as [his] death should have put them on notice that litigation was reasonably foreseeable." *Marcum v. Scioto County, Ohio*, 2013 WL 9557844, at *8 (S.D. Ohio, Nov. 21, 2013). The court also found that the criminal investigation requested by the local sheriff "should have alerted the defendants to potential legal action." *Id*.

In the instant motion, Johnson alleges that Defendants did not preserve the location of (1) Craig Johnson's body, (2) the weapon Craig Johnson was allegedly holding, (3) the officer toward whom Craig Johnson was allegedly aggressing, and (4) the officer who shot and killed Craig Johnson.[9] Dkt. 27-1, at 2. These locations are all things that the Court expects Defendants would have accurately marked, per BCSO procedure. Indeed, it seems that some effort was made to mark those locations, albeit with questionable reliability.

Here, Defendants shot a man in his own backyard. Defendants were alone, without live body cameras, and no third party was present to verify what occurred. In such a deadly situation, Defendants should have reasonably inferred that there would be future litigation and legal questions arising from their actions. That such an inference is reasonable is strengthened by the fact that Defendants had been in touch with Robin Johnson in the hours leading up to the service of the arrest warrant upon Craig Johnson. Any reasonable person, and especially a reasonable law enforcement officer, should have assumed that a decedent's spouse would ask questions and demand answers following an officer shooting, and that

[9] As will be discussed later, items 1, 3, and 4 were clarified during the hearing as concerns about the *methodology* used to mark the locations. Thus, the concerns are more a question of degree of accuracy than a binary question of accurate vs. inaccurate.

such questioning could come in the form of litigation. Additionally, Defendants had a preexisting agreement with local law enforcement agencies that mandated they preserve the scene of any officer involved shooting for an internal investigation. Such agreements are typically made with an eye towards future litigation, further strengthening the conclusion that Defendants should have known from the moment shots were fired that they had a duty to carefully preserve the evidence at the cabin.

The use of deadly force against a citizen, even if proven to be justified, is the most significant state power that a government can wield. The United States of America was built on the principle that a government ought to be restrained in its actions,[10] and, accordingly, the Constitution and laws place barriers, safeguards, and checks on state power.[11] When a state actor exercises its unique power of deadly force to enforce the law, it should reasonably be aware that those barriers, safeguards, and checks—which include litigation—will come into play to ensure that such power was correctly used. Thus, the Court concludes the Defendants had a duty to preserve evidence at the scene of the shooting.

Although it is clear as a matter of law that Defendants had a duty to preserve the crime scene, it is unclear what level of preservation is required. Johnson did not offer any expert testimony to demonstrate what is required to properly preserve a crime scene. The missing location of the pistol is troubling, although the pistol was still recovered as

---

[10] *See* THE DECLARATION OF INDEPENDENCE (U.S. 1776).

[11] The Court uses the word "state" here not to refer to the fifty states, but rather to any government power, including the federal government.

evidence. Johnson's counsel admitted during the hearing that they did not have any issues with whether the weapon was moved by officers if Johnson was still alive when it was moved but *did* take issue with the failure to mark the weapon's original location on the ground after it was safe to do so. The issue of preserving the location of the pistol is fairly discrete, and Johnson has not offered expert testimony to show that (1) Defendants should have made an effort to mark the gun's location on the ground after it was moved and (2) whether such an after-the-event marking could be reliably used. Thus, Johnson has not shown, at this stage of the proceedings, that Defendants had a discrete duty to preserve the location of the gun.

While Johnson claims foul play in regard to the cones marking the locations of Craig Johnson's body and the two snipers, Johnson acknowledges the main issue is that the individual who marked the cones has not been identified at this stage of the proceedings, leading to some reasonable questions about the methodology used for placing the cones. As Defendants point out, such information may still be discoverable by Johnson, as this question was not directly asked during discovery.

Johnson's third claim, regarding conflicting witness testimony, is not very strong because it is not surprising that witnesses' memories about a deadly, adrenaline-inducing situation could conflict even when they were gathered immediately after the shooting. In fact, that the witness testimony conflicts may even be evidence that witnesses did not gather to corroborate their stories.

In short, Johnson has not offered enough information for the Court to hold that the evidence in this case was spoliated as a matter of law. It is clear, as a matter of law, that

Defendants had a duty to preserve the scene of the shooting. However, based on the information currently before the Court, it is unclear as to what that duty entailed on a micro level, and it is consequently unclear whether Defendants breached this duty by not marking the gun's fallen location even though the weapon was still gathered as evidence.

b. Culpable State of Mind

Federal courts have not been "uniform in defining the level of culpability—be it negligence, gross negligence, willfulness or bad faith—that is required before sanctions are appropriate for evidence destruction." *Reinsdorf*, 296 F.R.D. at 627 (internal quotation marks and citation omitted). In the Ninth Circuit, district courts may impose sanctions for negligent destruction of evidence, even without a finding of bad faith. *In re Napster*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006). The Ninth Circuit has instructed that sanctions may be imposed against a spoliating party that merely had "simple notice of 'potential relevance to the litigation.'" *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 2013) (quoting *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)).

Previous cases further explain spoliation in the Ninth Circuit. In *Evans v. Avista Corp*., a record snowfall damaged gas meters at an industrial park and caused a gas leak, which then ignited and resulted in a significant fire at the plaintiffs' building. 2012 WL 4140649, at *1 (D. Idaho Sept. 19, 2012). Defendant kept the damaged gas meter in question in its evidence storage locker, but then inadvertently disposed of it during a move to a new location, even though the parties were in the middle of litigation. *Id*. at *13. The Court noted that "[t]hough there is no evidence that the Tracey Road gas meter was ever discarded in bad faith to gain some sort of tactical advantage relative Plaintiffs' claims

against it here, there is no dispute that it was nonetheless discarded intentionally." *Id*. Yet, the Court held that "Plaintiffs are hamstrung—through no fault of their own—in fleshing such details out in their favor" and that sanctions were therefore warranted. *Id*. at *15. The Court held that the previous inspections done on the gas meter by defendants or the insurance company were not sufficient because "Plaintiffs are simply not able to present to the jury their own interpretation of what took place leading up to the Tracey Road Fire." *Id*. The Court therefore ruled that the only appropriate sanction was "a non-rebuttable inference that the Tracey Road Fire was caused by snow falling on the Tracey Road gas meter."

In *Unigard*, 982 F.2d at 368, the Ninth Circuit affirmed the district court's exclusion of plaintiff insurer's expert testimony regarding the cause of a fire, and resulting summary dismissal, where plaintiff destroyed the electric heater it believed had caused a yacht fire two years before filing suit against defendant heater manufacturer. Similarly, in *State Farm Fire and Cas. Co. v. Broan Mfg. Co., Inc.*, the district court determined dismissal was an appropriate sanction against plaintiff insurer where plaintiff allowed the fire scene and a ventilation fan—the posited cause of the fire—to be destroyed without first confirming that defendant fan manufacturer had notice of the potential claim against it. 523 F. Supp. 2d 992, 997 (9th Cir. 2007). In *Dickinson Frozen Foods, Inc. v. FPS Food Process Solutions Corp.*, this Court held that Plaintiff had willfully spoliated critical evidence by chopping a large refrigeration unit in half and exposing it to the elements, but that Plaintiff had not acted in bad faith. 2019 WL 2236080, at *16 (D. Idaho, May 21, 2019).

The District of Arizona has stated: "Per se rules are too inflexible for this factually

complex area of the law where a wide variety of circumstances may lead to spoliation accusations. An allegedly spoliating party's culpability must be determined case-by-case." *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1007 (D. Ariz. 2011). Like the District of Arizona, this Court examines spoliation on a case-by-case basis.

Johnson's concerns with the alleged spoliation can be grouped into three main categories. First, the location of Craig Johnson's pistol was not marked and preserved by Defendants. Second, the methodology used to mark the cones for the positions of Craig Johnson, Deem, and Swanstrom is unclear. Third, the witnesses' memories are inconsistent. Dkt. 27-1, at 2, 7.

Johnson has not convinced the Court that Defendants acted with a culpable state of mind by acting willfully in failing to mark the location of the pistol. As discussed above, it is unclear whether Defendants violated a duty in failing to mark the location of the pistol. As such, Johnson is asking the Court to assume that Defendants had notice that the location of the pistol was required to be preserved, and Johnson has not provided adequate evidence to allow the Court to make this assumption. Johnson also asks the Court to assume that Defendants willfully failed to mark the weapon's landing spot because they failed to do so, and to ignore the significant possibility that the officers did not stop to mark the landing spot because they rushed to Johnson's side immediately following the shooting. On the current record, the Court cannot make the aforementioned assumptions. While Johnson may be correct that Defendants acted willfully, Johnson has not shown enough evidence at this stage for the Court to rule that the evidence of the pistol's location was spoliated.

It also is not clear that the failure to mark the location of the weapon that Craig

Johnson dropped is essential to Johnson's claims. In *Evans* (gas meter), *Unigard* (electric heater), *State Farm* (ventilation fan), and *Dickinson* (refrigeration unit), the spoliated evidence was central to the plaintiff's case. Indeed, in all of these cases, the evidence alone would have likely been outcome dispositive. Here, Johnson has not shown that the location of the fallen weapon will determine the outcome of the case. Nor, as in *Evans*, has Johnson shown at this stage that she will be hamstrung by not knowing where the pistol fell. The location of the weapon could mean a variety of things—even if it was marked—none of which are significantly useful to Johnson's claims, as far as the Court can tell. Thus, as Johnson has not shown that the location of the pistol is material to her claims, the Court holds that, at this stage, evidence regarding the location of the pistol was not spoliated.

Johnson's second claim regarding the problems with the methodology used to place the cones is also not adequate, at this juncture, to show that the locational evidence of the two snipers and Craig Johnson's body was spoliated. Johnson admits that the cones were placed. While there are questions about whether Craig Johnson's body was lying perpendicular or parallel to the cones, such problems arise from inconsistent witness memories, not necessarily from the location of the cones. While Johnson pointed out the problems that came from not knowing who placed the cones, it became clear at the hearing that Johnson may not have asked everyone who placed the cones. As such, it is unclear at best whether the methodology used to place the cones is still discoverable. In short, the Court cannot say one way or the other if the Defendants had a culpable mind in failing to properly place the cones because Johnson has not shown that Defendants actually failed to properly place them.

Johnson's third claim, regarding inconsistent witness memories, is not adequate to qualify as spoliation on the current record. Inconsistent and contradictory memories are one reason that jurors are asked to determine the truthfulness of an outcome. Memories are not physical evidence that can be spoliated as was the evidence in *Unigard*, *State Farm*, *Evans*, and *Dickinson*. Johnson also has not presented sufficient evidence to support her insinuation that the officers conspired to elude punishment by presenting conflicting testimonies. In short, conflicting witness testimonies is not enough to suggest this category of evidence was spoliated.

In short, Johnson has not shown enough evidence to show that Defendants acted willfully.

c. Relevance of the Evidence

It is undisputed that the evidence that was allegedly spoiled is relevant to the case. Indeed, the information regarding the location of Craig Johnson's body, his weapon, and the officers, is a vital part of the case. The Court therefore holds that the evidence in question is relevant.

d. Conclusion

After reviewing the evidence, the Court rules that Defendants did not willfully or intentionally engage in spoliation, based on the information currently in the record. However, the Court cannot yet make a ruling with respect to negligent spoliation. While the allegedly spoliated evidence was relevant to the case, Plaintiff has not presented sufficient evidence at this stage to show that Defendants violated a duty to preserve the location of the handgun. Plaintiff also has not presented sufficient evidence to show that

the inconsistent witnesses' memories destroy the foundation of the case, nor have they shown enough evidence to conclusively demonstrate that the confusion about the methodology used to place the cones was sufficient to find the cones were spoliated.

In short, the Court is concerned that spoliation may have occurred. However, without more facts and explanation from expert witnesses, it is too early in the judicial process for the Court to definitively and confidently rule regarding (1) the existence of spoliation and (2) what level of sanctions are appropriate. It may be that, at trial, it becomes clear as a matter of law that spoliation occurred. If so, the Court can determine the appropriate sanction at that time. It also is possible that the jury will have to decide what to infer regarding the fact that the weapon was not marked, or that the Court will ultimately issue instructions dictating the appropriate inference the jury should make.

## V. CONCLUSION

Defendant's Motion to Strike Declaration of Plaintiff's Expert Scott Roder (Dkt. 32) is DENIED because the evidence is reliable and appropriate for this stage of the proceedings. In regard to Johnson's Motion for Sanctions (Dkt. 27), Johnson has not shown, at this stage, that Defendants have spoliated the evidence. As such, the Motion for Termination and Money Sanctions (Dkt. 27) is DENIED.

///

///

///

**VI. ORDER**

The Court HEREBY ORDERS:

1. Johnson's Motion for Termination and Money Sanctions (Dkt. 27) is DENIED without prejudice.
2. Defendant's Motion to Strike (Dkt. 32) is DENIED.

DATED: December 8, 2021

David C. Nye
Chief U.S. District Court Judge